Miscellaneous Docket No. ___

---

IN THE

# United States Court of Appeals for the Federal Circuit

IN RE APPLE INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:21-cv-00984-ADA, Hon. Alan D Albright

## APPLE INC.'S PETITION FOR
## WRIT OF MANDAMUS

Betty H. Chen
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA  94063
(650) 839-5070

Benjamin C. Elacqua
FISH & RICHARDSON P.C.
1221 McKinney Street,
  Suite 2800
Houston, TX  77010
(713) 654-5300

Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

Jodie C. Liu
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

Melanie R. Hallums
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2121 Main Street
Wheeling, WV  26003

*Counsel for Petitioner*

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/17/2022

Signature:  /s/ Melanie L. Bostwick

Name:  Melanie L. Bostwick

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| Kelly Hart & Hallman LLP | J. Stephen Ravel | Ricardo J. Bonilla |
| Katherine D. Prescott | Jeanel Sunga | Daniel R. Gopenko |
| Qiuyi Wu | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| In re Apple Inc., No. 22-162 (Fed. Cir.) | In re Apple Inc., No. 22-163 (Fed. Cir.) | In re Apple Inc., No. 22-164(Fed. Cir.) |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................... vi

STATEMENT OF RELATED CASES ...................................................... ix

INTRODUCTION .................................................................................. 1

RELIEF SOUGHT ................................................................................. 3

ISSUE PRESENTED ............................................................................. 4

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 4

    Jawbone sues Apple for patent infringement in the Western
        District of Texas despite having no connection to that
        district .................................................................................. 4

    Apple moves to transfer the suit to the Northern District of
        California, and venue discovery proceeds ............................. 7

    The district court grants transfer to the Northern District of
        California .............................................................................. 14

    Jawbone seeks reconsideration, and the district court
        vacates its transfer order ..................................................... 15

    The district court sua sponte orders the parties to complete
        fact discovery and "re-brief" Apple's transfer motion
        before it will reconsider whether to transfer venue ............. 16

REASONS FOR ISSUING THE WRIT ................................................. 17

    I.    Apple Has A Clear And Indisputable Right To The
        Writ .................................................................................. 18

        A.    The district court clearly abused its discretion by
            violating binding precedent requiring courts to
            prioritize transfer motions. .......................................... 18

        B.    The district court's stated reasons for its
            extraordinary order cannot justify its departure
            from precedent. ........................................................... 24

iv

II.      Apple Has No Other Adequate Means To Obtain Relief...... 30

III.     Mandamus Is Appropriate Here Because Apple Has A
         Strong Case For Transfer And The Equities Heavily
         Favor Apple. .......................................................................... 33

         A.      The clearly superior convenience of the Northern
                 District of California makes the court-mandated
                 delay especially unjustified......................................... 33

                 1.     The private-interest factors strongly favor
                        transfer.............................................................. 34

                 2.     The public-interest factors also favor transfer... 38

         B.      The equities heavily favor Apple. ................................ 39

CONCLUSION ......................................................................................... 42

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010) ..................................................... 35, 38

*In re Apple Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) ....................................................... 36

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ............ 19, 20, 21, 22, 30, 31, 38, 39, 40

*In re Apple Inc.*,
    No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ... 35, 36, 37

*Cheney v. U.S. Dist. Ct.*,
    542 U.S. 367 (2004) .................................................................... 18, 33

*Cont'l Grain Co. v. The Barge FBL-585*,
    364 U.S. 19 (1960) ............................................................................ 18

*In re DISH Network L.L.C.*,
    No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ................ 37

*In re EMC Corp.*,
    501 F. App'x 973 (Fed. Cir. 2013) .......................................... 18, 19, 22

*In re Fusion-IO, Inc.*,
    489 F. App'x 465 (Fed. Cir. 2012) ...................................................... 22

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) .......................................................... 34

*In re Google Inc.*,
    No. 2015-138, 2015 WL 5294800 (Fed. Cir. July
    16, 2015) ..................................................20, 21, 22, 23, 25, 30, 31, 40

*In re Hoffmann-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) .......................................................... 36

*In re Horseshoe Ent.*,
337 F.3d 429 (5th Cir. 2003) ........................................ 19, 23

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ............................... 34, 35, 38

*Koss Corp. v. Apple Inc.*,
No. 6-20-cv-00665-ADA, 2021 WL 5316453 (W.D. Tex.
Apr. 22, 2021) ................................................................. 9

*LoganTree LP v. Apple Inc.*,
No. 6:21-cv-00397-ADA, 2022 WL 1491097 (W.D. Tex.
May 11, 2022) ................................................................. 9

*McDonnell Douglas Corp. v. Polin*,
429 F.2d 30 (3d Cir. 1970) ............................... 19, 22, 26, 40

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011) ...................................... 39

*In re Netflix, Inc.*,
No. 2021-190, 2021 WL 4944826 (Fed. Cir. Oct. 25, 2021) .......... 20, 30

*In re Nintendo Co.*,
544 F. App'x 934 (Fed. Cir. 2013) ........................... 19, 22, 30

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) ...................................... 34

*In re SK hynix Inc.*,
835 F. App'x 600 (Fed. Cir. 2021) ................. 20, 21, 23, 30, 31, 32

*In re TracFone Wireless, Inc.*,
848 F. App'x 899 (Fed. Cir. 2021) ......................... 20, 23, 32

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) .................................................. 31, 40

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ..................... 18, 33, 34, 38, 39

*In re Wyeth*,
    406 F. App'x 475 (Fed. Cir. 2010) ....................................... 19

**Statutes**

28 U.S.C. § 1404(a) ............................... 1, 19, 20, 21, 31, 33, 36, 38, 39, 40

**Rules and Regulations**

Fed. R. Civ. P. 30(b)(6) ................................................................ 7

**Other Authorities**

Apple's Response to Petition for Rehearing En Banc, *In re
    Apple Inc.*, No. 20-135, Dkt. 70 (Fed. Cir. Dec. 29, 2020) .................. 29

Complaint, *Jawbone Innovations, LLC v. Amazon.com, Inc.*,
    No. 2:21-cv-00435-JRG, Dkt. 1 (E.D. Tex. Nov. 29, 2021) .................. 5

Complaint, *Jawbone Innovations, LLC v. Google LLC*, No.
    6:21-cv-00985-ADA, Dkt. 1 (W.D. Tex. Sept. 23, 2021) ...................... 5

Joint Stipulation of Dismissal, *Koss Corp. v. Apple Inc.*, No.
    6:20-cv-00665-ADA, Dkt. 303 (W.D. Tex. July 23, 2022) .................. 27

Order of Dismissal, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-
    00665-ADA, Dkt. 304 (W.D. Tex. July 23, 2022) ............................ 27

Order Granting Motion To Transfer, *Cub Club Inv., LLC v.
    Apple Inc.*, No. 6:20-cv-00856-ADA, Dkt. 28 (W.D. Tex.
    Sept. 7, 2021) ...................................................................... 9

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding in the Waco Division of the Western District of Texas was previously before this or any other appellate court.

Apple is aware of three cases that may directly affect or be directly affected by the Court's resolution of this mandamus petition. Those cases involve similar facts as this one, and the district court entered substantively identical orders to the one at issue in this petition. Apple previously filed petitions for a writ of mandamus in each of those cases; those petitions are pending before this Court as *In re Apple Inc.*, No. 22-162 (Fed. Cir.); *In re Apple Inc.*, No. 22-163 (Fed. Cir.); and *In re Apple Inc.*, No. 22-164 (Fed. Cir.).

## INTRODUCTION

This Court has held that motions to transfer venue under 28 U.S.C. § 1404(a) must be decided promptly, at the outset of litigation, before the case has progressed substantially on the merits. Indeed, the purpose of § 1404(a) transfer is to ensure that litigation takes place in a convenient forum with some meaningful connection to the dispute. Delaying a transfer ruling beyond decisions that affect the substantive issues in the litigation undermines § 1404(a)'s purpose by forcing litigants and a district court to spend time and resources proceeding in a forum that may not ultimately try the case. Thus, this Court has granted mandamus relief to order district courts to decide transfer motions that have lingered on the docket while the cases advance to substantive stages like discovery, claim construction, and other merits matters.

Here, without ruling on Apple's fully briefed transfer motion, the district court affirmatively ordered the parties to complete fact discovery, begin expert discovery, and otherwise press forward on the merits for eight more months, after which the parties must "renew" briefing on the transfer issue. The district court has issued similar

orders in three other cases, and Apple's prior petitions for mandamus relief have demonstrated why each was a clear abuse of discretion.

This case has an additional unusual feature—the district court initially *granted* Apple's transfer motion. The district court subsequently revoked that grant, based not on the facts of this case, but instead on seemingly finding additional time in its schedule to consider the merits of the parties' transfer arguments. Two weeks later, the district court decided it would not consider those arguments until the parties completed full merits fact discovery. Only then will the district court consider transfer a second time. By then—thirteen months after Apple first filed its transfer motion—the parties will have not only completed fact discovery (under the district court's local rules and with the district court resolving all discovery disputes), they will have also begun expert discovery, served final patent infringement and invalidity contentions, and narrowed the asserted claims and prior art—all in an inconvenient forum that should not try this case.

The district court's substantial change in the schedule—in violation of clear precedent—cannot be justified by Apple's modest supplements to the venue record: the supplemental evidence consisted

solely of declarations confirming the veracity of information Apple had previously provided.  Furthermore, the district court's view that "[f]ull fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer" is at odds with precedent and unnecessary.  Appx4.  And the district court's frustration with "transfer-driven speculation about the witnesses and evidence," Appx5, can be addressed by crediting sworn testimony—which has proven to be reliable—rather than untested speculation.

Mandamus is urgently needed to address the district court's contravention of this Court's directives in its scheduling order, which has now been entered in at least four cases.  The Court should grant mandamus to ensure that transfer motions receive the priority they deserve.

## RELIEF SOUGHT

Apple respectfully requests that the Court issue a writ of mandamus directing the district court to vacate its scheduling order, promptly rule on Apple's pending transfer motion, and stay all district-court proceedings on the merits until transfer has been resolved.

## ISSUE PRESENTED

Whether Apple is entitled to a writ of mandamus to correct the district court's clear abuse of discretion in requiring the parties to complete full fact discovery and otherwise move the litigation forward on the merits for another eight months before the district court will consider whether to transfer this case.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *Jawbone sues Apple for patent infringement in the Western District of Texas despite having no connection to that district*

Jawbone Innovations, LLC ("Jawbone"), is a patent-holding company established in February 2021, shortly before the filing of this lawsuit. Appx93; Appx181. Jawbone acquired the patent portfolio of the now-defunct Jawbone, Inc., which ceased doing business in 2017. Appx93; Appx180. Jawbone's manager resides in Baltimore, Maryland, and Jawbone claims a principal place of business in Marshall, Texas. Appx181. Jawbone has minimal ties to the Western District of Texas, consisting only of an alleged "place of business" in Waco that appears to be merely empty office space. *See* Appx89; Appx180-181; Appx189; Appx204-208.

Jawbone has thus far brought two waves of patent litigation. First, in May 2021, it sued Samsung in the Eastern District of Texas. Appx181. Next, in September 2021, Jawbone filed suits against Google and Apple in the Waco Division of the Western District of Texas. *See* Appx31-88; *Jawbone Innovations, LLC v. Google LLC*, No. 6:21-cv-00985-ADA, Dkt. 1 (W.D. Tex. Sept. 23, 2021). Finally, in November 2021, Jawbone sued Amazon in the Eastern District of Texas. *See Jawbone Innovations, LLC v. Amazon.com, Inc.*, No. 2:21-cv-00435-JRG, Dkt. 1 (E.D. Tex. Nov. 29, 2021). In this suit against Apple, Jawbone accuses nearly all versions of Apple's iPhone, AirPods, HomePod, Beats, MacBook, and iMac products of infringing Jawbone's patents by virtue of their noise-suppression and voice activity-detection technologies. Appx95-107.

Nothing about this litigation has any meaningful connection to the Western District of Texas. Apple's research, design, development, marketing strategies, licensing, and finance operations for the accused technology take place in California, primarily in the Northern District of California, where Apple is headquartered. Appx177-179. Many likely trial witnesses are in California, including Apple engineers who

work on various aspects of the accused features and Apple employees with the relevant marketing, licensing, and finance knowledge. Appx177-179. It appears that no likely trial witness is located in the Western District of Texas. Appx186-187.

Jawbone, Inc., the company that developed the technology of the asserted patents, is a former California corporation, originally founded as AliphCom, Inc., which was headquartered in the Northern District of California. Appx180. Former executives of Jawbone, Inc., still reside in that district, including the CEO-founder and Chief Technology Officer. Appx180.

Other third parties with potentially relevant knowledge regarding Jawbone's allegations are also primarily in California: Four of the six named inventors reside there; the other two reside in Nebraska and the United Kingdom. Appx179-180; Appx271. Many of the prosecution attorneys for the asserted patents also reside in the Northern District of California. Appx180. A third party identified by the amended complaint, Envision IP, has offices in New York and North Carolina. Appx180-181. None of the third parties are in Texas.

### *Apple moves to transfer the suit to the Northern District of California, and venue discovery proceeds*

Because this case lacks any connection to the Western District of Texas, Apple moved to transfer the case to the Northern District of California. *See* Appx172-192. Venue discovery started shortly thereafter. *See* Appx158.

In support of its transfer motion, Apple relied on the declaration of Mark Rollins, a finance manager at Apple, to establish certain facts, such as the relevance, role, and locations of witnesses and their teams, as well as the relevance and locations of documentary evidence. Appx177-179; Appx183-184. As is typical and appropriate, in both venue disputes and litigation broadly, Mr. Rollins provided this declaration as Apple's corporate representative—akin to a Rule 30(b)(6) deponent. Appx194-202. Mr. Rollins is well-suited to serve as a corporate witness because, as a finance manager, he has knowledge of financial information concerning a broad array of Apple products that plaintiffs might accuse of infringement. *See* Appx194. He provides this type of information based on his personal knowledge. Appx194. For information that Mr. Rollins does not know personally, such as the identity and location of team members responsible for the accused

technology, he provides that information under oath based on his review of corporate records and discussions with Apple employees. Appx194.

Three weeks after Apple filed its transfer motion here, the same district court granted Apple's transfer motion in an unrelated case: *Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA (W.D. Tex. May 25, 2022). Appx404-428. In doing so, the district court sua sponte ruled on the "credibility" of Mr. Rollins, who had provided a corporate declaration in the *Scramoge* case that was comparable to his declaration in this case. Appx406-412.

As Apple demonstrated in later *Scramoge* filings, the district court's ruling identified no misstatements or other credibility deficiencies in Mr. Rollins's testimony. *See* Appx429-438 (Apple's motion to seal portions of *Scramoge* ruling); Appx440-457 (Apple's motion to vacate portions of *Scramoge* ruling). Instead, the district court faulted Mr. Rollins for doing exactly what corporate witnesses must do: gathering information from other Apple employees and relaying that information on behalf of the company. *See generally* Appx404-428. Indeed, the district court's *Scramoge* ruling retroactively

8

criticized statements Mr. Rollins had made in other cases, even though the district court itself (and sometimes this Court) had specifically credited those statements in ruling for Apple. Appx411; *infra* 9 n.1. The district court nonetheless stated that it was providing this "history" of "the offenses in Mr. Rollins's sealed declarations so that other courts and administrative agencies can similarly discount his credibility" in the future. Appx412 n.3.

Until the *Scramoge* order, Apple had no reason to know that the district court would take issue with this manner of presenting corporate information in support of transfer. Indeed, the district court had previously cited Mr. Rollins's declarations favorably in other cases.[1] And Apple does not believe that the *Scramoge* order identified any

---

[1] *E.g.*, *LoganTree LP v. Apple Inc.*, No. 6:21-cv-00397-ADA, 2022 WL 1491097, at *3, *6-7 (W.D. Tex. May 11, 2022) ("accord[ing] weight to the Rollins Declaration's representation" regarding location of the "source code and technical documents," and rejecting plaintiff's criticisms of that declaration); Order Granting Motion To Transfer, *Cub Club Inv., LLC v. Apple Inc.*, No. 6:20-cv-00856-ADA, Dkt. 28, at 6-9 (W.D. Tex. Sept. 7, 2021) (crediting evidence provided by Mr. Rollins under compulsory-process and witness-convenience factors); *Koss Corp. v. Apple Inc.*, No. 6-20-cv-00665-ADA, 2021 WL 5316453, at *3 (W.D. Tex. Apr. 22, 2021) ("agree[ing] with Apple," based in part on Mr. Rollins's declaration, that "access to sources of proof" factor favored transfer).

actual problem with Apple's practice of providing venue evidence through a corporate witness, let alone any basis for questioning Mr. Rollins's "credibility."  Nevertheless, after the district court expressed its preference for venue declarants to cover only matters within their personal knowledge, Apple endeavored to comply.

Apple acted promptly in this case to obtain declarations from each Apple employee Mr. Rollins had consulted in preparing his corporate declaration.  Appx216.  Each of these declarations confirmed, based on the declarant's personal knowledge, that everything in Mr. Rollins's original declaration was accurate.

For example, Mr. Rollins's declaration stated that he had spoken with Andrew Bright, a director in Apple's Audio Systems Engineering Group.  Appx197.  Mr. Rollins explained the responsibilities of Mr. Bright and his team and the location of relevant team members— including that none were in Texas.  Appx197.  In his personal declaration, Mr. Bright confirmed that he had spoken to Mr. Rollins before the original declaration was filed; stated that he had reviewed the relevant portions of Mr. Rollins's declaration and confirmed the facts were "true and correct"; and restated all of the facts originally

provided by Mr. Rollins, testifying to them based on his personal knowledge.  Appx223-225.

Apple followed the same process for Baptiste Paquier and Vasu Iyengar, managers in Apple's IMG Audio Group, who collectively are knowledgeable about the accused features in all accused products. Appx197-198.  Mr. Rollins originally explained that Mr. Paquier and Mr. Iyengar are in the Northern District of California and that their team members who work on the accused features are in California or New Zealand.  Appx197-199.  Mr. Paquier and Mr. Iyengar confirmed all of this information in their supplemental declarations.  Appx227-230; Appx231-234.

Each of the other new declarations provided the same confirmation.  And each came from an individual named in Mr. Rollins's original declaration.  Appx216.

On July 26, 2022, before the close of venue discovery, Apple served these declarations on Jawbone.  Appx215.  The following week, Apple filed a motion for leave to supplement its transfer motion to include the declarations.  Appx213-220.  Apple explained that, in light of the *Scramoge* order's criticisms, the district court would benefit from

hearing directly from the Apple employees identified in Mr. Rollins's declaration.  Appx217-218.  Apple further explained that Jawbone would not be prejudiced because (i) Apple had already identified those employees in its transfer motion and Mr. Rollins's declaration; (ii) the employees' declarations were substantively identical to the information Mr. Rollins had already provided; and (iii) Apple had provided the declarations to Jawbone as part of venue discovery, giving Jawbone time to depose any employee before filing its transfer opposition.  Appx217-218.

Apple also pointed out that, during more than two months of venue discovery, Jawbone had not sought to depose Mr. Rollins or any witness identified in his original declaration (that is, the same witnesses who provided the new declarations).  Appx215; Appx218.  Jawbone instead chose to depose *other* Apple employees.  Appx245.  To accommodate those depositions, the parties twice agreed to extend venue discovery.  Appx209; Appx249.  Pursuant to the district court's then-governing Standing Order, the parties had provided notice that Jawbone would file its transfer opposition on September 8, 2022, and Apple would file its reply on September 22, 2022.  Appx249.  "[T]o

12

extinguish any possible prejudice to Jawbone" from its requested supplement, Apple offered to accommodate another extension to Jawbone's transfer opposition deadline. Appx218. Jawbone did not request a further extension but filed its opposition on September 8.

Jawbone opposed Apple's motion to supplement, arguing that (i) the *Scramoge* order did not supply good cause to supplement; (ii) Apple's supplement was untimely; (iii) the new declarations were not important because the information contained therein may be "merely cumulative of the Rollins Declaration"; and (iv) Jawbone would be prejudiced "by having to respond to these new witnesses and facts." Appx238-239. Jawbone did not identify any reason it would need to respond to supplemental declarations that provided no new information. Although Jawbone stated that deposing the supplemental declarants would "require significantly more time and effort," Appx239, it has not sought to depose any witness identified by Apple to date. Appx245-246.

***The district court grants transfer to the Northern District of California***

On September 15, 2022, the district court sua sponte issued an order striking Jawbone's transfer opposition and granting Apple's transfer motion as "unopposed." Appx253-255.

The district court explained that, although the parties permissibly "modified their own [venue] discovery deadlines," they "also improperly modified Jawbone's opposition deadline to September 8, 2022 and Apple's Reply to September 22, 2022." Appx254. According to the district court, those modifications "affect[ed] the Court's ability to hold a scheduled hearing"—which is disallowed under one of the court's standing orders. Appx254. Specifically, the district court explained that Apple's transfer reply would be due on the same day the *Markman* hearing was scheduled, which would require postponing that hearing. Appx254.

Concluding that the parties' deadline modifications "violate[d] the Court's rules," the district court struck as untimely all transfer briefing filed after August 30, 2022. Appx254. The court also declared that "Apple **WAIVES** its right to file a [transfer] reply," and "**DENIED AS MOOT**" Apple's motion to supplement. Appx254. The district court

then ordered the case transferred to the Northern District of California.
Appx254.

### *Jawbone seeks reconsideration, and the district court vacates its transfer order*

Jawbone immediately filed an emergency reconsideration motion.
Appx256-262.  Jawbone stated that it "believed it was properly
following the Court's procedures" by stipulating to an extension of the
transfer briefing schedule, because the court had not yet scheduled a
transfer hearing.  Appx260.  Jawbone also argued that the transfer
order "imposes manifestly unfair and disproportionate sanctions for a
procedural mistake."  Appx261.

On September 20, 2022, the district court granted Jawbone's
reconsideration motion, though not for the reasons Jawbone provided.
Appx264-267.  The district court found it "inexcusable" that Jawbone
failed to understand that the deadline modifications "would affect the
Court's ability to hold the Markman hearing."  Appx266.  Nonetheless,
the district court granted reconsideration, explaining that its own
schedule changes in unrelated cases "require[d] the Court to postpone
the *Markman* hearing anyway."  Appx266.  "This gives the Court
additional time to consider the parties' late briefing while avoiding the

disproportionate impact." Appx266. The district court therefore vacated the transfer order, reinstated Jawbone's previously filed transfer opposition, and ordered Apple to file its reply brief the very next day. This put Apple's reply deadline one day *earlier* than it would have been had the district court not granted the transfer motion in the first place—and Apple had, understandably, suspended work on that brief when it was mooted by the transfer grant. Appx267.

Apple timely submitted its reply brief. Appx268-274. Apple also filed a renewed motion for leave to supplement the record, which was no longer moot but which the district court's reconsideration order did not address. Appx276-282.

### *The district court sua sponte orders the parties to complete fact discovery and "re-brief" Apple's transfer motion before it will reconsider whether to transfer venue*

Shortly after ordering the parties to complete briefing on transfer, the district court changed course again. On October 5, it granted Apple's renewed motion to supplement its transfer motion with the declarations confirming Mr. Rollins's original declaration. Appx1-14. In doing so, however, the district court also postponed a second ruling on Apple's transfer motion until after the completion of fact discovery

on the merits: It ordered the parties to "re-brief the motion to transfer … after the parties conduct fact discovery and determine which witnesses and evidence they intend to call at trial." Appx5. The district court did not identify anything that had changed in the fifteen days since it had ordered the parties to complete their transfer briefing.

The order provides for an additional 30 weeks of fact discovery (which had opened in July), to be followed by six weeks of additional briefing on the transfer motion. Appx5. The six weeks of additional briefing runs concurrently with expert discovery. That is, the district court ordered the parties to engage in more than *eight months* of additional fact and expert discovery and file additional transfer briefing before it will again consider whether to transfer venue. During this time, the parties also will be required to take other substantive steps, including filing final infringement and invalidity contentions—all pursuant to this district court's local rules and procedures (not the ones of the likely transferee forum).

## REASONS FOR ISSUING THE WRIT

Mandamus is warranted to ensure that the district court timely rules on Apple's already briefed transfer motion—rather than forcing

the parties to re-brief a transfer motion the district court already granted once. A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief [it] desires"; and (3) demonstrate that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (*Volkswagen II*) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). All three requirements are met here.

## I.    Apple Has A Clear And Indisputable Right To The Writ.

### A.    The district court clearly abused its discretion by violating binding precedent requiring courts to prioritize transfer motions.

A request for transfer is a threshold matter that a district court must address at the outset of litigation. The transfer statute is designed "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 27 (1960). But that goal is "thwarted" when defendants must participate in protracted litigation before transfer is resolved. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). Indeed, "[t]o undertake a consideration of the merits of the action is to

assume, even temporarily, that there will be no transfer before the transfer issue is decided." *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970).

For that reason, this Court has stressed "the importance of addressing motions to transfer at the outset of litigation." *EMC*, 501 F. App'x at 975; *see also In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (faulting district court for "barrel[ing] ahead on the merits in significant respects," including overseeing discovery disputes and claim construction, before deciding transfer); *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case."). Just as defendants must file transfer motions promptly, *see In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010), district courts must rule on them promptly, *see Apple*, 979 F.3d at 1337-38.

The Fifth Circuit has likewise decreed that transfer motions must take "top priority" in litigation. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). When district courts fail to afford that priority to transfer motions, this Court has repeatedly used its mandamus

authority to ensure that those courts do not "frustrate 28 U.S.C. § 1404(a)'s intent" by forcing litigants "to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015); *see also In re SK hynix Inc.*, 835 F. App'x 600, 600-01 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 900-01 (Fed. Cir. 2021); *cf. In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021) ("Delays in resolving transfer motions, coupled with ongoing discovery, claim construction, and other proceedings, frustrate the purpose of § 1404(a).") (denying mandamus because magistrate had ruled on transfer after petition was filed).

The scheduling order here is directly contrary to that precedent. While it defers the *Markman* hearing and claim-construction order "until the Court resolves the transfer motion," Appx17, those are only "two of the most important and time-intensive substantive tasks a district court undertakes," *Apple*, 979 F.3d at 1338. They are not the *only* important substantive tasks. The scheduling order guarantees that the district court will undertake many other important substantive

steps in this case before determining whether it is the venue where trial will ultimately take place.

Most notably, the order ensures that the district court will oversee all of fact discovery, including resolving any discovery disputes. But this Court has specifically identified these steps as ones that should await a transfer decision. *See id.* (faulting district court for holding "a discovery hearing, and issu[ing] a corresponding discovery order"); *SK hynix*, 835 F. App'x at 600-01 (faulting district court for "order[ing] the parties to engage in extensive discovery"; staying "all proceedings concerning the substantive issues of the case and all discovery" until transfer decision); *Google*, 2015 WL 5294800, at *1 (faulting district court for "proceeding through to the close of discovery" and overseeing "several discovery disputes").

Moreover, this Court has repeatedly endorsed the Third Circuit's precedent holding that "it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed, since it is irrelevant to the determination of the preliminary

question of transfer." *McDonnell Douglas*, 429 F.2d at 30-31.[2]  The

order here does exactly what the Third Circuit deemed improper.  *Id.* at

31 (vacating order that required all merits discovery to be completed

before district court would resolve transfer motion).

In addition, the order ensures that the parties must complete

multiple other substantive steps in the Western District of Texas before

the district court will reconsider whether this case should be

transferred to the Northern District of California.  Claim construction

briefing will be completed; the deadline to add parties will pass; the

parties will serve final infringement and invalidity contentions under

the local patent rules of the Texas forum; the deadline to amend

pleadings will pass; the parties will narrow the asserted claims and

prior art (again, according to the Texas court's particular rules); the

district court will resolve any dispute over that narrowing; and the

parties will exchange preliminary exhibit and witness lists for trial.  *See*

Appx16-17.  All of this will take place before the parties are even

permitted to resume briefing on Apple's transfer motion.  In short, the

---

[2] *See Apple*, 979 F.3d at 1337; *Google*, 2015 WL 5294800, at *1;
*Nintendo*, 544 F. App'x at 941; *EMC*, 501 F. App'x at 975 n.1; *In re
Fusion-IO, Inc.*, 489 F. App'x 465, 466 (Fed. Cir. 2012).

district court's order guarantees that the parties will expend significant resources and the case will substantially progress on the merits, all in a forum that ultimately may not preside over the case.

Furthermore, this substantive progress will take significant time. Apple filed its motion to transfer in May 2022.  Appx172-191.  Under the district court's scheduling order, that motion will not be fully briefed until over a year later, when Jawbone files a sur-reply in June 2023. *See* Appx18.  That delay is significantly longer than the type this Court has previously found to be unacceptable in the transfer context and to warrant mandamus relief.  *See Google*, 2015 WL 5294800, at *1 (delay of eight months from filing of motion); *TracFone Wireless*, 848 F. App'x at 900 (same); *SK hynix*, 835 F. App'x at 600-01 (same); *cf. Horseshoe Ent.*, 337 F.3d at 433 (Fifth Circuit faulting district court for "wait[ing] some 13 months" to rule on transfer).

A district court is not allowed to perpetuate this kind of delay by letting a transfer motion linger on its docket.  *Google*, 2015 WL 5294800, at *1.  It certainly cannot be allowed to achieve the same delay by ordering it to occur.

## B.    The district court's stated reasons for its extraordinary order cannot justify its departure from precedent.

The district court did not reconcile the scheduling order's built-in delay with this precedent.  And the district court's stated rationales do not justify the clear violation of precedent.

**1.**  The district court entered this order in the course of granting Apple's renewed motion to supplement venue discovery, which Apple refiled after the district court revoked its previous transfer order.  The district court stated that, "[i]n fairness, if one party supplements its motion, the Court will give the other party the same opportunity." Appx1.  But the district court had not found it necessary to give Jawbone that opportunity when it originally granted Apple's transfer motion, or when it reconsidered that grant and ordered the parties to finish briefing transfer.  Moreover, Apple's supplemental declarations presented no new information beyond what was already in Jawbone's possession, and all came from the same individuals Jawbone chose not to depose.  Appx245-246.  Even if Jawbone had expressed a need for any additional venue-related discovery, there is no reason why a short

continuance would not have sufficed, instead of the option the district court chose.[3]

Furthermore, this Court has rejected the notion that a defendant's motion to supplement the transfer record justifies the kind of prolonged delay the district court imposed here. *See Google*, 2015 WL 5294800, at *1-2 (granting mandamus to correct delay despite "the fact that Google moved to supplement its motion to transfer"). Apple's requested supplement was just as modest as Google's: Google sought to highlight particular deposition testimony, *id.*, while Apple sought to confirm its corporate witness's representations, *supra* 10-12.

**2.** The district court's second rationale also cannot justify delaying resolution of transfer. The district court opined that, in its experience, "speculation and incomplete discovery often plagues early transfer motions." Appx4. It asserted that "such transfer-driven speculation about the witnesses and evidence fails to align with reality," and that parties end up relying on different witnesses and evidence at

---

[3] The district court noted Apple's representation that "a continuance would not affect the overall trajectory of this case." Appx1. That representation related to a short continuance "to accommodate an extension to [Jawbone]'s opposition deadline," Appx281-282, not an eight-month delay.

25

trial "from what they identify in their transfer briefs." Appx5. The district court did not reconcile this position with the authority making clear that, despite this potential evolution of a case, merits discovery "is irrelevant to the determination of the preliminary question of transfer." *McDonnell Douglas*, 429 F.2d at 30-31.

More importantly, the district court did not cite any examples of this supposed mismatch. In particular, it did not identify any in this case, where the district court had twice expressed a willingness to decide transfer based on the existing record.

The district court's renewed criticisms of Mr. Rollins, Appx10-12, change nothing. The district court asserted, for example, that Mr. Rollins "explains complex technologies despite not being qualified as an expert." Appx10. That is not what Mr. Rollins does. He offers testimony on behalf of Apple and makes clear the sources of his knowledge. And in each recent case where the district court has questioned Mr. Rollins's testimony, his sources—the Apple employees with specific subject-matter expertise—have confirmed through supplemental declarations that he testified accurately. The district court has not identified any inaccuracies in Mr. Rollins's declarations in

this or any other case. And the district court's main distinction between Mr. Rollins and other companies' declarants that it deems more reliable is that those other declarants (from Meta and Google, for example) have "uncovered evidence that weighs against transfer," whereas Mr. Rollins sometimes does not identify such evidence—because it does not exist. Appx8-9.

The real-world evidence tells a different story from what the district court suggested about "transfer-driven speculation" versus reality. In fact, the district court had available to it a recent example showing exactly the opposite of what it described—in a case involving some of the same Apple technology at issue here. That case, in which the district court had previously denied interdistrict transfer, settled just days before trial. *See Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkts. 303, 304 (W.D. Tex. July 23, 2022). At the transfer stage, Apple identified thirteen California-based Apple employees who would be likely trial witnesses, with none in Texas. Appx314-316. Koss, in contrast, argued that two non-party witnesses were in Texas and that two Austin-based Apple employees were also likely witnesses. Appx357-360. Despite Apple's showing that its Austin-based employees

had no relevant information, the district court denied transfer based partly on Koss's unsupported speculation.  Appx367-395.

The parties' witness lists, filed shortly before trial was set to begin, confirmed Apple's predictions at the transfer stage.  Every Apple employee on Apple's "will-call" and "may call" trial lists was a California-based witness identified in Apple's original transfer motion. *Compare* Appx334-346 *with* Appx402.  Plainly, Apple's transfer motion did not "identify witnesses and evidence based on location rather than relevance," as the district court charged here.  Appx4-5.

But the other side of the story is even more telling.  Koss's trial witness lists did not include either of the Austin-based Apple employees whom Koss had featured in opposing transfer.  *Compare* Appx334-346 *with* Appx397-398.  Nor did it list the Texas-based third-party individual who had worked on Koss's own products, despite relying heavily on him at the transfer stage.  *Compare* Appx334-346 *with* Appx397-398.  What Koss's lists did include, however, were *ten* of the California-based Apple employees that *Apple* had identified at the transfer stage—despite vigorously opposing the idea that many

California-based Apple witnesses would be forced to travel for trial. *Compare* Appx397-398 *with* Appx334-346.

In other words, just as Apple predicted more than a year before trial, a significant number of Apple employees would be required to travel from their homes in Northern California to Waco, Texas, to participate in this trial. This is not unusual: as Apple has previously explained, its witnesses in patent trials—in any venue— overwhelmingly come from Northern California. *See In re Apple Inc.*, No. 20-135, Dkt. 70, at 20 (Fed. Cir. Dec. 29, 2020) (noting that 87% of the 71 Apple employees who had testified live in patent trials since 2013 came from Northern California, with none coming from Texas).[4]

In short, to the extent the district court is concerned that parties are engaging in "transfer-driven speculation" that "fails to align with reality," Appx5, experience demonstrates that the most reliable information is provided by a party's sworn testimony and assertions that are tested through the venue-discovery process, not by geography-driven speculation.

---

[4] According to Apple's records, this statistic for patent trials through August 2022 is now approximately 92% from Northern California, and none from Texas.

**3.** Finally, the timing of the *Markman* hearing does not justify the delay, either. The district court suggested that the scheduling order was permissible because, under the new schedule, "the *Markman* hearing will occur after the Court issues its transfer opinion." Appx7. But while *Markman* is one important merits step, it is not the only one. This Court has repeatedly identified proceedings like fact discovery and supervision of discovery disputes as key aspects of a case that should take place after transfer is resolved. *See, e.g.*, *Netflix*, 2021 WL 4944826, at *1; *SK hynix*, 835 F. App'x at 600-01; *Apple*, 979 F.3d at 1338; *Google*, 2015 WL 5294800, at *1; *Nintendo*, 544 F. App'x at 941. Merely ensuring that the *Markman* hearing takes place after the transfer ruling does nothing to lessen the time and cost to all parties of completing those proceedings in an inconvenient forum.

## II.    Apple Has No Other Adequate Means To Obtain Relief.

Mandamus is the only way for Apple to obtain relief here. Without this Court's intervention, the district court will not consider Apple's transfer motion for more than eight additional months while forcing the parties to litigate the merits of this case. No appeal from final judgment could remedy the inconvenience and expense of

litigating for such an extended time in a venue with no connection to this dispute.

Time and again, this Court has explained that transfer motions "should unquestionably take top priority" in a case. *Apple*, 979 F.3d at 1337; *supra* 18-22. This Court has also made clear that mandamus relief is appropriate to resolve "a lengthy delay in ruling on a request for [transfer]," which "can amount to a denial of the right to have that request meaningfully considered." *Google*, 2015 WL 5294800, at *1. Such delays "frustrate … § 1404(a)'s intent to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

In other words, a party whose transfer motion sits on the docket for months gathering dust suffers the same harm—unfixable on appeal—as a party whose transfer motion is improperly denied. Both face the hassle and expense of litigating in an inconvenient venue that has little-to-no connection to the dispute. *Compare Google*, 2015 5294800, at *2 (granting mandamus and ordering district court to decide transfer within 30 days while staying all other proceedings), and

*SK hynix*, 835 F. App'x at 601 (district court's "refusal to give priority to deciding the transfer issues demonstrates that SK hynix has no alternative means by which to obtain [relief]"), *with Apple*, 979 F.3d at 1337 ("the possibility of an appeal in the transferee forum following a final judgment … is not an adequate alternative" (citation omitted)).

Here, absent this Court's intervention, and despite a fully briefed transfer motion, Apple will spend more than eight additional months litigating "[f]ull fact discovery," Appx4, in a district court that very likely will not rule on the merits of the case, *see infra* Part III.A.  And even if the district court ultimately grants Apple's motion to transfer this case, Apple cannot recover the time and resources that it will have spent litigating fact discovery and moving forward on the merits in the Western District of Texas.  Thirteen months is an "egregious delay" that demonstrates "blatant disregard for precedent," and Apple "has no alternative means" besides mandamus to avoid that delay.  *SK hynix*, 835 F. App'x at 600-01; *see TracFone Wireless*, 848 F. App'x at 900-01.

## III. Mandamus Is Appropriate Here Because Apple Has A Strong Case For Transfer And The Equities Heavily Favor Apple.

Given the clear merits of Apple's underlying transfer motion and the equities surrounding the district court's sua sponte scheduling order, mandamus is especially "appropriate under the circumstances" here. *See Volkswagen II*, 545 F.3d at 311 (quoting *Cheney*, 542 U.S. at 381). The district court's approach fundamentally undermines the purpose of § 1404(a), and only a writ of mandamus directing the district court to promptly rule on Apple's pending transfer motion can prevent this harm.

### A. The clearly superior convenience of the Northern District of California makes the court-mandated delay especially unjustified.

As explained above (at 19-20), the purpose of resolving a § 1404(a) motion is to prevent the parties from having to expend resources litigating in an inconvenient venue—and one that may not ultimately be the setting for trial. Here, as Apple's fully briefed transfer motion demonstrates, this case has virtually no connection to the Western District of Texas, while the evidence, witnesses, third parties, and local interest are overwhelmingly concentrated in the Northern District of

California.  In short, this case involves the type of "stark contrast in relevance, convenience, and fairness between the two venues" that compels transfer.  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  Mandamus is therefore warranted to ensure that Apple is not forced to litigate in a clearly inconvenient forum at least for another eight months—a total of thirteen months since filing—before its transfer motion is decided.

### 1.  The private-interest factors strongly favor transfer.

The private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citation omitted).  These factors strongly favor transfer here, except the last, which is at worst neutral.

First, the witness-convenience factor "is 'probably the single most important factor in [the] transfer analysis.'" *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)).  And where, as here, several

34

potential witnesses are in the transferee forum and none are in the
transferor forum, that critical factor weighs heavily in favor of transfer.
*See, e.g.*, *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed.
Cir. Nov. 15, 2021).  Apple provided sworn testimony specifically
identifying its technical and likely trial witnesses, including Apple
engineers familiar with the accused technology and Apple employees
knowledgeable about Apple's financial records, marketing initiatives,
and patent licensing.  All are in California—almost all in the Northern
District of California—and no relevant team members are in Texas or
even have ties to Texas in connection with their work on the accused
products.  *See* Appx186; Appx196-201.  Jawbone, in contrast, resorted to
mischaracterizing the deposition testimony of Texas-based Apple
employees to suggest that they might have relevant information.
Appx269-271.

Next, the sources-of-proof factor weighs heavily in favor of
transfer.  *See, e.g.*, *Juniper*, 14 F.4th at 1321; *In re Acer Am. Corp.*, 626
F.3d 1252, 1256 (Fed. Cir. 2010).  Apple's sources of proof are either in,
or more easily accessed from, the Northern District of California, where
Apple is headquartered and where the majority of its relevant

documents, business records, source code, and the teams that developed the accused technology are based.  Appx183-184; Appx196-197.

Meanwhile, there appear to be no sources of proof in or more easily accessed from the Western District of Texas.  *See* Appx199; Appx201.  Jawbone's Waco office space is nothing more than "a fiction which appears to have been created to manipulate the propriety of venue," *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009).  Whatever minimal documents are stored in that office, they deserve little weight in the § 1404(a) analysis.  Appx272.

The availability of compulsory process likewise "weigh[s] heavily in favor of transfer" because there appear to be substantially "more third-party witnesses resid[ing] within the transferee venue than … in the transferor venue."  *Apple*, 2021 WL 5291804, at *3 (quoting *In re Apple Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)).  Apple has identified at least nine relevant third-party witnesses who could be compelled to appear in the Northern District of California.  Appx179-180.  Those witnesses include most of the named inventors of the asserted patents, former executives of Jawbone with knowledge about the asserted patents, and many of the prosecution attorneys.  Appx179-180;

36

Appx185.  Jawbone identified, at most, a single prosecution attorney who could be compelled to testify in Texas.  Appx271.

Finally, the "practical problems" factor is at worst neutral.  While Jawbone filed another suit in the Western District of Texas asserting several of the same patents against Google, that suit involves a different defendant and different categories of products.  Appx187.  That suit thus will "likely … involve significantly different discovery and evidence." *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021); *see also Apple*, 2021 WL 5291804, at *4 ("[W]e have rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor.").  Moreover, any claimed efficiency is undermined by Jawbone's own decision to assert some of the same patents against Samsung and Amazon in a *different* district (the Eastern District of Texas).  *See* Appx187.  Thus, at worst, the practical problems affecting the transferor and transferee venues are a wash, making this factor neutral in the transfer analysis.

## 2.     The public-interest factors also favor transfer.

The § 1404(a) public-interest factors include: "(1) the
administrative difficulties flowing from court congestion; (2) the local
interest in having localized interests decided at home; (3) the
familiarity of the forum with the law that will govern the case; and
(4) the avoidance of unnecessary problems of conflict of laws [or in] the
application of foreign law." *Volkswagen II*, 545 F.3d at 315 (alteration
in original).  Here, each of the public-interest factors that is not neutral
favors transfer.

First, because of its "significant connections" with "*the events that
gave rise to [the] suit*," the Northern District of California has a strong
local interest.  *Apple*, 979 F.3d at 1345 (quoting *Acer*, 626 F.3d at 1256);
*see also Juniper*, 14 F.4th at 1319-20.  Jawbone relies heavily on Apple's
general presence in the Western District of Texas, but such general
contacts do not establish a local interest in this litigation.  *See Apple*,
979 F.3d at 1345.  Meanwhile, Jawbone's recent presence in Waco
appears to be "a construct for litigation" that "exist[s] for no other
purpose than to manipulate venue" and thus should receive no weight

in the transfer analysis. *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011).

The relative congestion of the two courts has at worst a neutral effect on the transfer analysis. This Court has repeatedly "noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *Juniper*, 14 F.4th at 1322; *see also, e.g.*, *Apple*, 979 F.3d at 1343-44.

## B.    The equities heavily favor Apple.

The fact that the district court ignored clear precedent and guaranteed months of delay before it will address Apple's transfer motion is enough to warrant mandamus relief. "[A] court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents," and "mandamus is entirely appropriate to review for an abuse of discretion that clearly exceeds the bounds of judicial discretion." *Volkswagen II*, 545 F.3d at 310. But here, mandamus is especially warranted in view of how the district court's order came about and the effects it will have if permitted to stand.

To start, the district court's sua sponte scheduling order fundamentally undermines § 1404(a)'s purpose of avoiding

"unnecessary inconvenience and expense.'" *Google*, 2015 WL 5294800, at *1 (quoting *Van Dusen*, 376 U.S. at 616). Section 1404(a) serves that purpose only when district courts give transfer motions "top priority." *Apple*, 979 F.3d at 1337. Here, if the scheduling order stands, the parties will have done almost everything short of preparing for the pretrial conference before the district court rules (for the second time) on Apple's transfer motion. *Supra* 20-23.

Likewise, the district court will have expended considerable resources familiarizing itself with the case to resolve disputes over discovery and the asserted claims and prior art, among other things. *Id.* But judicial efficiency requires that the "district court should not burden itself with the merits of the action until [transfer] is decided." *McDonnell Douglas*, 429 F.2d at 30. If Apple's motion is ultimately granted—as it should be, *see* Part III.A—another district judge will receive a brand-new case that is well into litigation, in which many issues have been resolved, and in which trial preparation is underway according to another court's local rules and preferences. There is no reason to burden a judge with that outcome.

There is particularly no reason to do so when neither party has asked for that result and when the district court's reasons for imposing it do not withstand scrutiny. In opposing Apple's motion to supplement, Jawbone did not ask for more time to test the facts contained in the new declarations. Nor did it deny that these declarations supplied the same information already in Jawbone's possession, from individuals it had elected not to depose. Appx239. Jawbone does not seem to be interested in taking any additional steps to ensure "an accurate identification of the witnesses, parties, and evidence relevant to this case," Appx1.

The district court previously appeared willing to resolve transfer on the existing record. It first granted Apple's transfer motion—necessarily concluding that Apple satisfied its burden to demonstrate convenience—and thus accepted Apple's supporting declaration from the same individual that the district court now deems "unreliable." Appx253-254; Appx10-11. Then the district court ordered the existing transfer briefing reinstated and indicated its intent to re-rule on transfer once Apple filed its reply brief—even though Apple had already sought to supplement the venue record with declarations confirming

41

Mr. Rollins's original submission.  Appx266-267.  Nothing materially changed between the order reinstating transfer briefing and the district court's decision to postpone a transfer ruling until after the completion of fact discovery next spring.  And while the district court cited concerns with Mr. Rollins's declaration in issuing that scheduling change, Appx10-12, the supplemental evidence that it admitted via the same order consisted entirely of declarations confirming the truth of Mr. Rollins's statements, Appx285-308.  The district court did not acknowledge this fact.  The district court's shifting approach to the transfer issue underscores the extraordinary circumstances here—and thus underscores the appropriateness of mandamus relief.

## CONCLUSION

The Court should issue a writ of mandamus directing the district court to vacate its scheduling order, rule on Apple's pending transfer motion, and stay all proceedings on the merits until transfer has been resolved.

October 17, 2022

Betty H. Chen
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA  94063
(650) 839-5070

Benjamin C. Elacqua
FISH & RICHARDSON P.C.
1221 McKinney Street,
    Suite 2800
Houston, TX  77010
(713) 654-5300

Respectfully submitted,

*/s/ Melanie L. Bostwick*

Melanie L. Bostwick
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

Jodie C. Liu
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

Melanie R. Hallums
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
2121 Main Street
Wheeling, WV  26003

*Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system on October 17,

2022.

A copy of the foregoing was served upon the following counsel of

record and the district court via FedEx:

Alfred R. Fabricant
Peter Lambrianakos
Vincent J. Rubino, III
Richard Cowell
Joseph M. Mercadante
Jacob Ostling
Justine Minseon Park
FABRICANT LLP
411 Theodore Fremd Avenue, Suite 206 South
Rye, New York 10580
Tel.: (212) 257-5797
ffabricant@fabricantllp.com
plambrianakos@fabricantllp.com
vrubino@fabricantllp.com
rcowell@fabricantllp.com
jmercadante@fabricantllp.com
jostling@fabricantllp.com
apark@fabricantllp.com

Raymond W. Mort, III
THE MORT LAW FIRM, PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel.: (512) 865-7950
raymort@austinlaw.com

Hon. Alan D Albright
United States District Court for the Western District of Texas
800 Franklin Avenue, Room 301,
Waco, Texas 76701
Telephone: (254) 750-1501

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

The petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this petition contains 7796 words.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*